IN THE UNITED STATES FEDERAL DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

YVONNE BOHAC ALLEN,                                    )
                                                       )
an individual and Petitioner, Respondent and           )
Third Party Petitioner                                 )
                                                       )
v.                                                     )
                                                       )
CENTRAL TRUST COMPANY, as                             )
Trustee of the John Fingal Allen III                   )
Testamentary Trust u/w dated 1/26/09                   )
now Parkside Financial Bank and Trust                  )       Case No.:
Company as successor Trustee of the                    )
John Fingal Allen, III Testamentary Trust              )
u/w dated 1/26/09                                      )
                                                       )
     Respondent, Petitioner and                       )
     Third Party Respondent                           )
                                                       )
                                                       )
and                                                    )
                                                       )
DAVID ALLEN, an individual, THOMAS                    )
ALLEN, by and through his duly appointed               )
agent, David Allen; SANDRA ALLEN                       )
PADGETT, by and through her duly appointed             )
agent, David Allen; RICHARD CUTLER                     )
ALLEN, by and through his duly appointed               )
agent, David Allen; ANDREW PADGETT, by                 )
and through his appointed agent, David Allen;          )
TIMOTHY PADGETT, by and through his                    )
duly appointed agent, David Allen; SARAH               )
ALLEN, by and through her duly appointed               )
agent, David Allen; EMILY ALLEN, by and                )
through her duly appointed agent, David Allen;         )
AUGUSTUS ALLEN, by and through his duly                )
appointed agent, David Allen; MATTHEW                  )

1

PADGETT, by and through his duly appointed                    )
agent, David Allen; JONATHAN PADGETT, by         )
and through his duly appointed agent, David          )
Allen; JOHN GRAHAM ALLEN, by and               )
through his duly appointed agent, David Allen;      )
and ASTRID ALLEN, by and through her duly        )
appointed agent, David Allen,                                  )
                                                                              )
       Respondents,                                          )
                                                                              )
v.                                                                            )
                                                                              )
CENTRAL TRUST COMPANY                             )
*238 Madison Street*                                             )
*Jefferson City, Missouri 65101*                          )
                                                                              )
       Respondent,                                           )
                                                                              )
v.                                                                            )
                                                                              )
PARKSIDE FINANCIAL BANK AND                    )
TRUST,                                                                 )
8112 Maryland Avenue                                        )
Suite 101                                                              )
St. Louis, MO 63105                                            )
                                                                              )
                                                                              )
v.                                                                            )
                                                                              )
DAVID ALLEN, an individual, THOMAS            )
ALLEN, by and through his duly appointed           )
agent, David Allen; SANDRA ALLEN                  )
PADGETT, by and through her duly appointed      )
agent, David Allen; RICHARD CUTLER              )
ALLEN, by and through his duly appointed           )
agent, David Allen; ANDREW PADGETT, by       )
and through his appointed agent, David Allen;       )
TIMOTHY PADGETT, by and through his            )
duly appointed agent, David Allen; SARAH         )
ALLEN, by and through her duly appointed          )

2

agent, David Allen; EMILY ALLEN, by and          )
through her duly appointed agent, David Allen;    )
AUGUSTUS ALLEN, by and through his duly           )
appointed agent, David Allen; MATTHEW             )
PADGETT, by and through his duly appointed        )
agent, David Allen; JONATHAN PADGETT, by          )
and through his duly appointed agent, David       )
Allen; JOHN GRAHAM ALLEN, by and                  )
through his duly appointed agent, David Allen;    )
and ASTRID ALLEN, by and through her duly         )
                                                  )
       Counter Claimants &                      )
       Third Party Respondents.                 )

**PETITION FOR REMOVAL ON 19SL-PR03008 AND 21SL-PR01813**

COMES NOW on this of October, 2021, the Respondent, Yvonne Bohac Allen, by and through her counsel, Stephen C. Banton #22693, and files and serves all parties a Petition for Removal from the St. Louis County Circuit Court of Missouri, to the USDC for the Eastern District of Missiouri, due to violations of the FRCP Rule 2.03 (FRCP Rule 81c, 28 USC § 1331, 28 USC § 1441, 28 USC § 1446, and 42 USC § 1983, Missouri Rule 84.04 (reversable error), 18 USC § 241, and 18 USC § 242.)

**JURISDICTIONAL STATEMENT**

The Petitioner understands that normally the Federal Court does not usually handle probate matters except for the probate diversity exception, in which this case clearly is. [See ref Three Keys Ltd v. SR Util. Holding Co., 540 F.3d 220, 227 (3d Cir. 2008)]. This is one of those rare cases in which the USDC for the Eastern District of Missouri justices must ask themselves was the referee out to lunch, during this whole case, as well as, why any of the red flags were not recognized during this whole case, and if anything went right it would surprise you in this matter.

Out of professional courtesy, as well as, to simplify this matter, the Petitioner will give a history of facts and connect the dots on why this case had taken a turn for the worst, and why these issues were not addressed in the lower court. This matter for the USDC for the Eastern District of Missouri justices that this was a complete manifest injustice, which should never have occurred, and which should NOT have been allowed to transpire in this matter.

Thus, federal courts may now assume jurisdiction over matters relating to probate estates so long as the matter being litigated does not implicate the above-listed subjects. For example, plaintiffs in post-Marshall v. Marshall <u>may now assert claims under federal law</u> (after meeting the jurisdictional requirement of having either diversity of parties <u>or the presence of a federal question)</u> for intentional/tortious interference with inheritance so long as the plaintiff seeks in person damages from the tortfeasor(s), and not the distribution of property in the actual control of the probate court, which is the case in this matter.

The Petitioner had exhausted her remedies in state jurisdiction, in which both lower courts had failed to hear the issues on the merits, as well as, suppose you are representing a trustee bank, to defend a breach of fiduciary duty claim brought by a income beneficiary in probate court and seeking damages in excess of $75,000. At your first meeting, the bank's representative asks whether the party may remove the action to federal court, based on federal diversity jurisdiction (which requires diversity of citizenship between the parties and an amount in controversy of $75,000 or more), which is true in this matter.

Removal Cases, 115 U.S. 1, 3, 5 S. Ct. 1113, 1113 (1885); *see also* 36 *Fla. St. U.L. Rev* at 332; *Rockey v. Harrison,* No. 1:14-cv-00147, 2014 U.S. Dist. LEXIS 118304, at *2 n.1 (N.D. Ohio Aug. 19, 2014). In sum, a federal court may exercise jurisdiction over a federally chartered company when a federal question exists, or when diversity is met. In order to establish diversity,

one may need to look to the statute creating the chartering authority or rely on a judicially created exception.

Regarding a state court's jurisdiction, it must comply with the Due Process Clause and the applicable long-arm statute. Ultimately, the *Marshall* Court described the scope of the probate exception thus: "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Justice Ginsburg also described the limits of the probate exception: "[I]t does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." The Supreme Court rejected this holding: "Under our federal system, Texas cannot render its probate courts exclusively competent to entertain a claim of that genre." Justice Stevens filed a concurrence, in which he posited that the probate exception ought not to be recognized any longer: "I do not believe there is any 'probate exception' that ousts a federal court of jurisdiction it otherwise possesses." [See ref *Marshall v Marshall*, 547 US 293, 299; 126 S Ct 1735; 164 L Ed 2d 480 (2006)] Therefore, the U.S. District Court for the Eastern District of Missouri is proper and just for this removal due to Extrinsic acts of Fraud pursuant to 18 USC § 1001, 18 USC § 1341 violations of Due Process under the 14ᵗʰ Amendment to the U.S. Constitution, violations of the State and Federal Constitutional rights under 18 USC § 241 and 18 USC § 242, money laundering under 18 USC § 1956, violations of Contractual law under 41 USC § 6503, Obstruction of Justice under 18 USC § 1503, and clear acts of manifest injustice, as well as, gross judicial malfeasance. Manifest injustice "[g]enerally [ ] means that the Court overlooked some dispositive factual or legal matter that was presented to it." Rose v. Alternative Ins. Works, LLC, Civ. Action No. 06-1818, 2007 WL 2533894, at *1 (D.N.J. Aug. 31, 2007). Manifest

injustice has also been held to occur where there is " 'an error in the trial court that is direct, obvious, and observable.' " Greene v. Virgin Islands Water & Power Auth., Civ. Action No. 06-11, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (quoting Tenn. Prot. & Advocacy, Inc. v. Wells, 371 F.3d 342, 348 (6th Cir.2004). The Petitioner will clearly show all of the Federal violations in this matter, in which led to a complete failure of justice to prevail in this matter, as well as, will show the malicious intent in this matter, and why the USDC for the Eastern District of Missouri should have jurisdiction over this case and correct the failures, which were allowed in this matter, to balance the scales of justice.

## HISTORY IN THIS CASE

1.      Yvonne Marie Bohac Allen lives at 1600 Bopp Road; Des Peres, MO 63131. She married her late husband, John Fingal Allen, III, on October 4, 2003. John Fingal Allen, III, who was also known as Jack Allen, died July 31, 2014 and was a practicing lawyer. The decedent left a will dated January 26, 2009. See Exhibit 1. Under it, Yvonne was entitled to all the net income of the estate and the testamentary trust (the Yvonne Trust). In the will, Yvonne Marie Bohac Allen was named independent personal representative of Jack's estate because he trusted her more than his family.

2.      After Jack's death, she sought guidance on how to close her husband's law practice. With matters continuing, she hired attorneys to complete them. The fees were split with half going to the estate and half going to the attorney. The law office income included $16,029.94 in referral fees and a net profit of $15,312.00.

3.      Closely held employee-owned corporate stock of Davey Tree Experts had to be sold to diversify holdings of the estate and to furnish income to pay costs and expenses. There was a net

income of $135, 979.00 (capital gains). There were dividends and interests, creating an income of $1,158.43. There was also $47,690.97 in the general portfolio dividends and portfolio interest.

4.      In the above two paragraphs, there was no testimony or witness on the total income. In the June 28, 2018 hearing, there was no stipulation on what the income was. The hearing was limited to the expenses being allowed. There was testimony on income of $47,690.97 but this was the dividends and interest income from the portfolio.

5.      In Jack Allen's will, it provided a legacy for each spouse of his kids. David Chandler Allen's wife did not qualify because they were getting a divorce. Jack also provided a legacy for each grandchild and Yvonne's two sons by a previous marriage. When each grandchild and stepson turns twenty-five years old. Four of the fourteen received checks for $10, 966.45 each, which they cashed in June of 2016.

6.      On May 27, 2016 David Allen and Thomas Allen were not please with Yvonne Allen, because she was putting half of the assets into growth stocks and investments and the other half into income generating investments. They wanted at least sixty percent of the portfolio invested in growth stocks.

7.      May 27, 2016 David Allen and Thomas Allen filed a petition to remove Yvonne Allen as independent personal representative of her husband's estate. June 2, removal petition set for hearing was reset for August 12, 2016 at 10:00AM. August 8, 2016 Randall D. Grady enters his appearance for petitioner Yvonne Allen. August 11, 2016 at 6:44PM, Thomas Allen files memorandum accusing Yvonne Allen of (1) self-dealing, (2) intentional misconduct, (3) waste. August 12, 2016 Commissioner Weiss removed Yvonne Allen's authority as independent personal representative of her husband's estate.

8.     The removal of Yvonne Allen as Personal Representative was continued. The personal representative, Yvonne Allen, through her attorney, requested an additional fifteen days to file the settlement which was granted.

9.     On October 13, 2016, Yvonne Allen, through her attorney, requested an additional three weeks because the attorney was going to be out of town and because the employee worker on the matter had to take a leave of absence for a major medical procedure. The request was denied.

10.     On October 27, 2016, Thomas Allen and David Allen, with counsel, and Yvonne Allen with Randall Grady, appeared. The Judge issued its order removing Yvonne Allen as representative of her husband's estate and appointed David Allen as successor personal representative based upon extrinsic fraud documents and fraudulent accusations committed by David Allen or Thomas Allen.

11.     October 31, 2016, the formal order was issued removing Yvonne Allen as personal representative of Jack Allen's estate, and Yvonne Allen was ordered to file a settlement to removal before November 18, 2016. The court appointed David as personal representative of Jack Allen's estate. The court stated "the matter was heard and discussed in chambers" which constitutes ex parte communication, bias, and judicial malfeasance.

12.     On November 3, 2016, the settlement from July 31, 2014 through July 31, 2016 was filed. On November 4, 2016, supporting documents for the settlement were filed. On November 11, 2016, the settlement from August 1, 2016 to October 31, 2016 were filed.

13.     On November 22, 2016, David Allen filed an objection to the Court Ordered Settlement. David Allen stated that Yvonne paid unauthorized and unnecessary expenditures totaling 220,061.24 in Exhibit A. Exhibit A was sealed and no one, not even Yvonne Allen or her

attorney was allowed to see it which denies Yvonne Allen proper discovery and the concealment, is further obstruction of justice, judicial malfeasance and clearly manifest injustice.

14.     On October 19, 2017, almost a year later, auditing stated that the settlement to remove was not accepted for these reasons:

a.  No Court ordered disbursement (Yvonne was an independent personal representative and did not seek a court order) $24,343.05 in estate expenses which she was allowed as an independent personal representative under 473.810 were not allowed. There was a document attached to the auditor request that we suspect came from David Allen or some other source. The list includes $1,917.15 in checks issued August 2016 which were not authorized because Yvonne Allen was NOT made aware of the Commissioner's ruling that independent administration of Jack Allen's estate was revoked until September 2016. She was told the case was continued to October 27, 2016. The so-called hearing was done in the Judge's chamber which constitutes a pattern of ex parte communication, bias and judicial malfeasance.

b.  Vouchers could not be identified. (Every page of the settlement and all documentation for it was attached to each settlement page in the order it appeared.)

c.  Settlement did balance. (The annotated settlement was completed and balanced)

15.     On November 17, 2017, the annotated settlement was filed page by page with the documentation attached with each page in the order it appears on the page. No further correspondence was received on the settlement from auditing.

16.     On April 20, 2017, David Allen filed a suit to remove Yvonne Allen as one of the two trustees of Jack Allen's testamentary trust (which Jack called labeled in his will as the "Yvonne Trust").

17.     David Allen in his petition argued that Yvonne Allen was unfit and lacked cooperation and was unfit, unwilling, or persistent failure to administer the estate effectively and which there is clear evidence to the contrary to that David Allen and Central Trust Company have mishandled the estate and trust for their own financial benefit and the residual beneficiaries.

18.     David Allen ignores the intent of John Fingal Allen, III to provide an income for Yvonne for her life at the standard of living the couple had before Jack's death and that Yvonne Allen was to position and adjust the portfolio to provide the revenue for this standard. Yvonne Allen was NOT to be removed except for actual "fraud or willful misconduct". Following the instructions of the decedent in Jack's will is NOT fraud or willful misconduct.

19     In the suit to remove Yvonne Allen as co-trustee of the Yvonne Allen Trust (Jack Allen's Testamentary Trust), we sought a copy of Exhibit A, which was attached to David Allen's objections to our settlement. David Allen produced a disc with thousands of pages. After the Court ordered them to furnish the document, they gave it to us just before the trial. The original document, which listed companies and contained misspellings, blank checks, double payments, etc. The document was eventually replaced by a new Exhibit A stating that they needed further detail and/or justification for expenses. We do not know when the change took place in the records because we were not informed of it.

20.     After a judge trial, Yvonne Allen agreed to step down as trustee of the Yvonne Trust and Judge Carol C. Whittington made it clear that she did not rule on Yvonne Allen's counterclaim against David Allen and Thomas Allen.

21.     The decedent's children challenged all expenses. The two-day period allotted for the trial was not enough to cover every estate expense and the personal expenses of the personal representative.

22.     Prior to Jack Allen's death, he told his wife that she could treat her personal expenses as estate expenses, or she could take the net income as stated in the will since she did not work outside of the home when they got married and she was Jack's caregiver due to his health issues.

23.     The court disallowed all credit card payments and some important and clearly estate expenses, which showed judicial bias and manifest injustice.

24.     Many of the expenses were grouped together because two credit cards were used to pay the bills.

25.     The hearing was held on June 28 and 29, 2018 was primarily on expenses and no other matters were considered at this time. The personal representative's case took more than two (2) hours because they were challenging each and every expense as a whole, rather than as individual items. Because many of the estate expenses were paid by credit card, they were rejected in total.

26.     Commissioner Weiss judgement was the response to the following motions, claims and two petitions to remove David Allen as independent personal representative of Jack Allen's estate:

a.  The two motions filed on November 11, 2018 and at 1:08 PM are identical and cover fifteen providers of services (Legacy Law 925.00; Davey Tree Expert $412,00; Cervantes Landscaping $626.95; Chesterfield Lawn and Landscaping; 35.00; Laclede Gas $127.63; USAA $1,44.80; AT&T Uverse $103.05; MSD $112.51; Ameren $1,135.38; AT&T $336.06; Riezman Berger, P.C. $2,399.20; Aquadoc $760.00; Discover Card $1,912.16; USAA Credit Card $6,020.42; and Missouri American Water $239.21)

b.  Two claims for charges incurred in providing legal services to the estate get information, statements, etc. to prepare the settlements from August 1, 2014 through July 31, 2016 and later for settlements to removal from August 1, 2016 to October 31, 2016. The latter claim supersedes filed August 7, 2017  was intended to be filed March 15, 2017. Both are nearly identical.

c.  The supplemental filing was an amended settlement and an annotation of the bank settlement statements.

d.  The claim filed on February 19, 2018 was for $65,709.63.

e.  Motion to approve expenses by Yvonne Allen which included $34,876.65, incurred as an independent personal representative of Jack Allen's Estate. The expenses included (Randall Grady of Reizman Berger, PC; Chesterfield Lawn and Landscaping; USAA; Davey Tree Expert, O.J. Laughlin Plumbing Company; Schilli Pastering Company; AT&T). There was another $1,834.15 in expenses after August 12, 2016. This brings the total of this claim to $36,704.77.

f.  Petition for legal fees and cost by Thomas G. Allen, Sandra Allen Padgett, David Chandler Allen and Richard Cutler Allen.

g.  Fourth Amended Claim for $16,500.00 itemized statement bringing everything up to date.

27.  The two petitions for the removal of David Allen as Independent Personal Representative were never heard or set for trial but the court ruled against them because they included the trust company.

28.     Funeral expenses, tax expenses, homeowner's insurance, maintenance and protection of capital assets in the estate, like the home, are valid estate expenses including the removal of a broken hot tub.

29.     Self-dealing and outlandish expenses, as David Allen would define them, would include repairs protecting the house from storm water damage, replacing trees damaged by storms, and things that would enhance the property value. David Allen's outlandish expenses include more than $150,000.00 in attorney's fees to the Polsinelli law firm, and paying himself $42,022.63 as personal representative of the estate.

30.     Keeping or maintaining the home is outlandish to David Allen and the Allen siblings feel that Yvonne Allen should bear all the cost of the home and pay rent to the estate or trust which violates Jack's will and purpose, plus the marriage contract.

31.     Yvonne Allen's attorney talked with the probate auditing department and explained how they were set up. The checkbook was balanced. There were no blank checks, no distorted descriptions, no duplicate checks, no duplicate check numbers and no duplicate amounts for expenses in Yvonne Allen's check register.

32.     At the time of the two day trial on expenses, June 28 and 29, 2018, David Allen would not identify the expenses which they objected to but objected to all expenses, increasing the trial time needed to three to five days. The Commissioner stated at the end of the second day that he would go through all expenses and issue an order.

33.     He sent home witnesses on the income and stated that income issues should be addressed by Judge Levy.

34.     After the June 28 and 29, 2018 hearing, Yvonne Allen resubmitted the credit card expenses that were clearly estate related expenses and supporting documents.

35.    All of these tactics were designed to delay the closing of the estate, consume income and principal to pay Tom and David Allen's legal fees, defraud the court and Yvonne Allen by forcing her to pay estate expenses and at the same time, denying her right to income as promised in Jack's will.

36.    Central Trust Company continued the restructuring of and changing the purpose of Jack Allen's Will, in violation of The Will, failing to provide Yvonne Allen with income for the rest of her life and using state law to violate state and federal constitution, contractual rights and due process and federal laws.

37.    Central Trust Company was a partner with David Allen in designing and implementing the plan that is in place now. Central Trust Company communicated with David Allen while the suit to remove Yvonne Allen as independent personal representative of the Jack Allen Estate was going on. The accounts of the estate were already at Central Bank formerly known as First National Bank of St. Louis. The Principal and Income statute was the perfect tool to take capital gains (gains income) and convert it to "principal" and use it to fund and pay the Trust Company's fees and charges.

38.    This was just a simple probate case which was allowed to turn into a 6-ring circus with six different case numbers, in which the Petitioner will address in the violations, as well as, started with manufactured extrinsic acts of fraud to get the Petitioner removed as appointed personal representative.

39.    Then the Respondent was allowed to place "Exhibit A", in camera and under seal for a period of 1 year without the lower court ordering a show cause as to why this should be placed in camera and under seal, in which should have been an immediate red flag, due to the fact the Respondents manufactured false evidence, pursuant to 18 USC §1001, as well as, 18 USC §

14

1341, in which the Respondent altered at least 3 times to justify the removal of the Petitioner as the personal representative.

40.     The Respondent and the lower court allowed to file multiple last-minute Memorandums and Orders, which violated the Petitioners ability to present a defense, or rebuttal in a moments notice, and which violated the Petitioner's right to due process under 14 USC §1983, as well as, the guaranteed protections of the 14th Amendment to the U.S. Constitution.

41.     The Respondent was allowed to transfer the investments in the Portfolio and stocks, in the trust, in which was estimated close to $1,598 848.91, which involved Wells Fargo bank, First National Bank, and Central Bank & Trust, and Parkside Financial Bank and Trust Company, illegally, and without notice to the court or the Petitioner, as well as, in violation of the Last will and Testament, which was set up to provide for the Petitioner. Evidently, the Respondent had forgotten banks are under the Department of Commerce, which is clearly Federal Jurisdiction.

42.     Because of the court sanctions and emails, in which show direct malice and intent, this now clearly violates the Petitioners constitutional rights protected by 18 USC § 241 and 18 USC § 242, as law mandates.

**I. Did acts of extrinsic fraud acts occur in this case?**

43.     The Respondent had manufactured blank checks and falsified evidence and placed it in camera and under seal as "Exhibit A" to justify the removal the Petitioner as personal representative, which constitutes fraud upon the court was concealed by the court for nearly a year.

44.     The lower court denied the petitioner the right to structure investments to provide her with a lifetime income without a hearing or due process.

45.     The lower court denied the Petitioner's related estate expenses totaling $24,343.05, which was allowed by law under 473.810, which constitutes fraud upon the court.

46.      The lower court allowed the Central Trust Company to restructure the original intent of the will and testament, by altering the portfolio, which now constitutes fraud upon the court.

47.     The lower court allowed $150,000.00 for future legal fees, which constitutes fraud upon the court.

48.     The lower court was allowed to make decisions after the judge was asked to be removed, due to a possible concealment of appearance of conflict of interests,

49.     The lower court sanctioned the Petitioner on allowable expenses, in which constitutes fraud upon the court.

50.     The lower court failed to disclose that her husband worked for Polsinelli, PC which were the attorneys for the Respondent, David Allen, and which constitutes fraud upon the court.

51.     The lower court disallowed the Petitioner to call witnesses (specifically to wit: the accountants) to verify her accounting was correct, which constitutes fraud upon the court.

52.     The lower court denied the Petitioner's revenue of $98,052.03 in net capital gains and net profit from business over and above the dividends and interest of $47,690.97 which is fraud on the court.

53.     The lower court had stripped the Petitioner of her right to "net income and capitol gains" impairing the obligation of contract. Which constitutes fraud upon the court. The lower court violated Petitioner's right to net income using the Principle and Income statute.

54.      The lower court altered, removed or destroyed documents, which were filed and now conveniently cannot be located, or has changed, in which constitutes fraud upon the court.

**MEMORANDUM IN SUPPORT OF**

Whenever any officer of the court commits fraud during a proceeding in the court, the person is engaged in "fraud upon the court". In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted." "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. " Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final." Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828) Elliot v. Piersol "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Mireles v. Waco 502 US 9, 116 L Ed 2d 9, 14, 112 S Ct 286 (US 1991) Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and

is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted."

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. " Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final." "Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled Illinois law that any attempt to commit "fraud upon the court" vitiates the entire proceeding. The People of the State of Illinois v. Fred E. Sterling, 357 Ill. 354; 192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions. "); Allen F. Moore v. Stanley F. Sievers, 336 Ill. 316; 168 N.E. 259 (1929) ("The maxim that fraud vitiates every transaction into which it enters ..."); In re Village of Willowbrook, 37 Ill.App.2d 393 (1962) ("It is axiomatic that fraud vitiates everything." ); Dunham v. Dunham, 57 Ill.App. 475 (1894), affirmed 162 Ill. 589 (1896); Skelly Oil Co. v. Universal Oil Products Co., 338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); Thomas Stasel v. The American Home Security Corporation, 362 Ill. 350; 199 N.E. 798 (1935).

Under Missouri and Federal law, when any officer of the court has committed "fraud upon the court", the orders and judgment of that court are void, of no legal force or effect.

In support of this curiously narrow construction of what constitutes fraud on the court, the majority offers two cases that not only do not support it, but directly contradict it. The majority points to *Hazel-Atlas Co. v. Hartford Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) as authority for the proposition that fraudulent documents cannot constitute fraud upon the court. This ignores the fact that the *Hazel-Atlas* Court found precisely the opposite — that fraudulent documents, in that case an article whose authorship had been misattributed, can constitute such fraud. *Id.* at 247, 250, 64 S.Ct. at 1001-1003. The case of *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115 (6th Cir.1976) does, as the majority argues, stand for the proposition that nondisclosure by a party or witness is not grounds for an action for fraud upon the court. The *Porter* court goes on to make clear, however, that if Porter's attorneys had known of and sponsored such misdeeds as nondisclosure, misrepresentation or perjury, it would have been quite another matter: "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *Porter,* 536 F.2d at 1119.

## II.   Did due process violations occur in this case?

55.     As a pattern of practice, the lower court allowed last minute memorandums and orders from the respondent, in which violated due process for the Petitioner to prepare and defend any argument that the Respondent had claimed, as well as, challenged the validity of any documents or arguments.

   **A.** On August 11, 2016 at 6:44 PM, a memorandum was filed accusing Yvonne Allen of self-dealing, intentional misconduct, waste and mismanagement, which was never proven on the merits.

   On August 12, 2016, Commissioner Weiss revoked Yvonne Allen's power of independent administrator and to restructure investments to provide her lifetime

income. Yvonne's US Constitutional rights were violated, depriving Yvonne of notice and right to answer or respond. The memo was an ex parte communication.

**B.** On March 27 at 4:36 PM, the Respondent filed a memo stating that the net income from the law practice is not income but marshalling of assets; capital gains on Davey Tree Expert stock was "principal" not "income".

The next day, March 28, 2019, David Allen's attorney asked Judge Levy if she got his memo; the judge said yes. Yvonne's attorney asked for a hearing. Judge Levy said she would decide if it was necessary and we indicated that the tax returns showed that Yvonne was entitled to a substantial amount in income. Judge Levy took a copy of the will and the tax returns for the fiscal year 2014 and 2015 (August 1, 2014 through July 31, 2016). The next day, on March 29, 2019, Judge Levy denied the motion but only cited information on the expenses. Yvonne Allen's due process rights were violated. Yvonne Allen was deprived of her right to answer and to respond to accusations in the memo, yet another ex parte communication memo.

**C.** A Motion to Set Aside the Court Order issued March 29, 2019 because of David Allen's ex parte action and fraud on the court and fraud against Yvonne Allen was filed on August 6, 2019. The matter was set for hearing August 16, 2019, without being heard on the merits.

David Allen filed an opposition bench brief regarding all pending matters and the motion to set aside the March 29, 2019 Order on August 15, 2019 at 1:55 PM. David Allen changed the memo of March 27, 2019, converting all capital gains to principal to "money received from the sale or liquidation of a principal asset is normally allocated to principal" which shows practice of extrinsic fraud for his financial gain.

Their brief recited a history of accusing Yvonne Allen of engaging in self-dealing and "improperly diverting assets". They conveniently forgot the fact that Jack Allen gave his wife the authority to invest and reinvest and structure the investments to achieve the income for life at the same standard of living she had with Jack when he was alive.

### III.   Did constitutional rights violations occur in this case?

56.     In John Fingal Allen, III's will, he was providing for his wife of ten years – a home, an income and a standard of living equivalent to that of which they had together while he was alive. Jack named the trust the Yvonne Trust.

57.     The reason he gave Yvonne Allen complete control of building up and diversifying the portfolio was because he did not trust his children. He did trust Yvonne Allen to be fair and she was building a fifty percent (50%) growth and fifty percent (50%) income portfolio. Jack acknowledged that she might make a mistake or two and provided for it.

58.     What Jack was authorizing was self-dealing in order to get the income up and get it to a point where it would provide income to sustain Yvonne Allen's standard of living she had when Jack was alive.

59.     By reducing yields and dividends, by using capital gains income to fund the long term beneficiaries share of trust costs and by using other strategies David Chandler Allen

and the Trust Companies can and were providing for the long term beneficiaries and

ignoring the income for the life beneficiary, Yvonne Allen.

60.     In Jack Allen's will, he also gave Yvonne Marie Bohac Allen the "entire net

income" of the estate and the Yvonne Trust. Jack Allen did not separate capital gains and

net income from the law practice from other sources of net income.

61.     While the laws passed were not intended to curb those rights under the will and

the trust, that has been the active practice of the Respondents.

62.     The changes to the estate and trust portfolio were worked out with and among

David Allen, Central Trust Company and Parkside Bank and Trust Company without

notice or input from Yvonne Marie Bohac Allen, the lifetime income beneficiary. The

matter was held behind closed doors, denying Yvonne Allen the right to confront

witnesses against her, the right to testify, the right to a hearing and the failure of the trust

company to protect the interest of the lifetime income beneficiary. Yvonne Allen was in

the courtroom and Commissioner Weiss was in chambers with attorneys and Yvonne

Allen did not know her rights as an independent personal representative had been taken

from her for nearly a month.

**IV.Did Money Laundering violations occur in this case?**

63.     Without an independent accounting, it cannot be fully determined if Central Trust

Company's failure to collect all assets was part of money laundering to hide gains. Was money

laundering used to hide the two different reconciliation statements, one given to David Allen and

22

a different one given to Yvonne Allen? Was money laundering used to convert income cash to principal cash for growth? When Judge Carolyn Whittington made Central Trust Company the sole trustee of the testamentary trust, she intended that it would take place immediately. She awarded both parties attorneys fees and denied both parties some of the attorney fees and required Central Trust Company to pay both. Central Trust Company was the sole trustee and had the absolute authority to take control of all assets but they never did, even when they closed the estate.

**V.Did contractual violations occur in this case?**

64.     In this case, if the Respondents did not use the Principle and Income Statute or other law to violate the will and marital contract, then the respondents are outwardly breaching or violating the will and marital contracts.

**VI.Did Obstruction of Justice occur in this case?**

65.     In John Fingal Allen, III's will, he was providing for his wife of ten years – a home, an income and a standard of living equivalent to that of which they had together while he was alive. The reason he gave Yvonne Allen complete control of building up and diversifying the portfolio was because he did no trust his children. Jack Allen did trust Yvonne Allen to be fair. She was building an investment portfolio with a fifty percent (50%) growth and fifty percent (50%) income stocks and investments. Jack Allen acknowledged that she might make a mistake or two and provided for it.

66.     What Jack was authorizing was self-dealing in order to get to a point where income was adequate ($60,000.00 a year).

67.     By reducing yields and dividends, by using capital gains income to fund the long term beneficiaries share of trust costs and by using other strategies David Chandler Allen and the Central Trust Company were providing for the long term beneficiaries and ignoring the income for the life beneficiary, Yvonne Allen.

68.     In Jack Allen's will, he also gave Yvonne Marie Bohac Allen the "entire net income" of the Yvonne Trust. Jack Allen did not separate capital gains and net income from the law practice from other sources of net income.

69.     While the laws passed were NOT intended to curb those rights under the will, the Respondents have used it to change the Yvonne Allen Trust to a long investment trust for David Allen and his siblings and their children.

70.     After failing to file a settlement by October 27, 2016, Yvonne Allen was removed as Personal Representative of Jack Allen's Estate. Yvonne Allen filed the settlement due on November 3, 2016. She filed the Settlement to Removal November 11, 2016.

71.     On November 22, 2016, David Allen filed objections to the settlement.

72.     David Allen cited the objections in an Exhibit A which David Allen had sealed by the court and was sealed from the Petitioner and her Attorney. For nearly a year, there was no correspondents from auditing. The math was correct. After a year, accounting

posed several objections based on Exhibit A which was not Yvonne's document and did not refer to her documents.

73.    Exhibit A was changed by David Allen several times. After Commissioner Weiss's Order and Judgement on expenses, the Exhibit A was changed to its current form, reflecting the court judgement. "Need further detail/justification for expense."

74.    The forcing and creating of numerous cases to avoid tracking and conspiring to cover up as well as obstruction of justice, David Allen and his cohorts created a labyrinth of injustice greater than manifest injustice.

75.    The Petitioner request that all six of the related cases and matters be properly enjoined into this action. The cases that should be included are: 14SL-PR02596; 17SL-PR01280; 19SL-PR02910; 19SL-PR03008; ED 108484 and 21SL-PR01813.

**VII.Did violations of CFR 11.440 occur in this case specifically to wit: (altering, removing, or destroying court records), in which cannot be explained, nor found in the official court record?**

76.    Yvonne Allen requests that the federal court send in an auditor to review all lower court records to determine what records were changed, altered or modified in these cases (14SL-PR02596; 17SL-PR01280; 19SL-PR02910; 19SL-PR03008; 21SL-PR01813 and ED108484). Below is just an example of records and orders changed.

77.     When David Allen states in his memo to the court filed March 27, 2019 at 4:36PM, then the night before the hearing on March 28, 2019 in 14SL-PR02596 states that capital gains was "principal" and not "income".

78.     When fraud was argued in a similar motion in 14SL-PR02596 which was filed August 6, 2019 and heard on August 16, 2019 David Allen changed his March 27, 2019 memo to state capital gains was <u>normally</u> allocated as principle.

79.     Yvonne Allen filed a motion to disqualify Judge Ellen Sue Levy. On February 6, 2020 at a hearing on the motion, Judge Ellen Sue Levy indicated that her husband worked for the Polsinelli firm, the same firm that represented David Allen, and disqualified herself. When Yvonne Allen made bias and issue in the appeal ED 108484, the disqualification memos were rewritten in an attempt to sanitize them from the accusation and charge of bias in 14SL-PR02596; 19SL-PR02910 and 19SL-PR03008.

**VIII. Did a Manifest Injustice or reversable error occur in this case?**

80.     John Fingal Allen, III's goal was to provide for his wife, Yvonne Allen, a home and income for the rest of her life at a standard of living at the same level as when they were married. From Yvonne Allen's Plan: *fifty percent (50%) growth stocks and investments and fifty percent (50%) income investments with almost an annual income of $60,000.00 annual yield.* Around 5% to 6% income was nearly at target of $60,000.00.

81.     To David Chandler Allen and Central Trust Company's Plan: *nearly one hundred percent (100%) growth and an annual yield of one or two percent (1% or 2%).* Income was significantly

reduced with literally no prospect of Yvonne Allen getting anything for the rest of her life. Now in 21Sl-PR01813 David Allen is attempting to sell Yvonne Allen residence (owned by the Yvonne Trust now called the John Fingal Allen, III Testamentary Trust) and investing it in growth stocks with a low yield to make the disinheritance complete.

82.     The baby boomers now reach the pinnacle in world history and are transferring more wealth from one generation to the next with a framework of complex families and blended structures and more adversary court proceedings. Probate litigation may become more like family law, and the pattern of practice of fraud upon the court may become a common reality.

**IX.Was there gross judicial Malfeasance or Negligence in this case?**

83.     Commissioner Weiss committed malfeasance when he acted quick to remove Yvonne Allen's rights as an independent personal representative without giving her a chance to be heard, her attorney Randall Grady had entered his appearance on August 8, 2016. The memo accusing Yvonne Allen of self-dealing, intentional misconduct, waste and mismanagement was filed August 11, 2016. Weiss revoked Yvonne Allen's rights to independent administration without a hearing on August 12, 2016 and set the motion to remove Yvonne Allen at a later day. It was done in chambers and Yvonne Allen, who was sitting in the courtroom, did not find out until a month later.

84.     On December 6, 2017, in an action to remove Yvonne Allen as a trustee of the Yvonne Trust and name a corporate trustee, Central Trust Company, Judge Whittington awarded attorney's fees of $15,000.00 to Robert Selsor, David Allen's attorney, and $5,000.00 to Stephen

Banton and ordered them to be paid by Central Trust Company. Judge Whittington denied claims by David Allen's attorney for an additional $15,502.80.

85.    David Allen raised the issue a second time in front of Commissioner Weiss who awarded David Allen the remaining fee of $15,502.80 to be split amongst the four siblings who advanced the funds plus $27,098.91 for the removal of Yvonne Allen as personal representative of her husband's estate. Judge Whittington had retired from the bench, but someone changed her order so it did not reflect the fees denied. The fees previously were denied by Judge Whittington in 17Sl-PR01280.

86.    On June 28 and 29, 2018, there was a hearing on expenses. Commissioner Weiss would not allow a hearing on anything else and specifically indicated that income issues are handled by Judge Ellen Sue Levy. In Commissioner Weiss' judgement of October 17, 2018, he did not even mention in the text an income figure which was added at the last minute by a footnote.

87.    On June 29, 2018, Commissioner Weiss sent Yvonne Allen's witness on financial and income matters home because that was Judge Ellen Sue Levy's role. Judge Ellen Sue Levy said Commissioner Weiss having the benefit of hearing all evidence in two day hearing and assessing the credibility of witness made specific findings to support her conclusion in14SL-PR02596 order of March 29, 2019.

88.     Commissioner Weiss ruled on all expenses and a judgement was issued. The judgement did not take into account, that Yvonne Allen was an independent personal representative and was entitled under 473.810 RSMo to $24,343.05 in additional expenses from the estate.

89.     On November 14, 2018 Yvonne Allen filed two motions – one to reconsider income and one to reconsider certain expenses which were never heard and which constitutes gross judicial malfeasance and manifest injustice.

90.     David Allen filed a Memorandum on March 27 at 4:36 PM where it stated the net income of the practice is not income but marshalling of assets. Capital gains on employee owned Davey Tree Expert Company was "principal" not "income". Stating that capital gains is principal and not income ignores the exception in that law when it comes to wills and trusts, in which the court had a fiduciary duty to investigate and follow the law when it comes to wills and contracts, which Judge Levy failed to do, which clearly shows bias, gross judicial malfeasance and gross injustice.

91.     The next day, March 28, 2019, David Allen's attorney asked Judge Levy if she got his memo; the judge said yes. Yvonne's attorney asked for a hearing, Judge Levy said she would decide if it was necessary and we indicated that the tax returns show that she is entitled to a substantial amount in income ($98,052.03). Judge Levy took a copy of the will and the tax returns for fiscal years 2014 and 2015 (August 1, 2014 through July 31, 2016). The next day, on March 29, 2019, Judge Levy denied the motions but only cited information on the expenses.

Yvonne Allen's due process rights were violated, the actions show a pattern of practice of fraud and ex parte communications and shows gross judicial malfeasance and manifest injustice.

92.     A Motion to Set Aside the Court Order issued March 29, 2019 because of David Allen's ex parte action and fraud on the court, the action was filed on August 6, 2019. The matter was set for hearing August 16, 2019, without being heard on the merits. David Allen filed an opposition bench brief regarding all pending matters and the motion to set aside the March 29, 2019 Order on August 15, 2019 at 1:55PM. David Allen changed the memo of March 27, 2019, converting all capital gains to principal to "money received from the sale or liquidation of a principal asset is normally allocated to principal." which shows practice of extrinsic fraud for his financial gain. Their brief recited a history of accusing Yvonne Allen of engaging in self-dealing and "improperly diverting assets". They conveniently forgot the fact that Jack Allen gave his wife the authority to invest and reinvest and structure the investments to achieve the income for life at the same standard of living she had with Jack when he was alive.

93.     When the Estate of Jack Allen came before Judge Ellen Sue Levy, she should have disqualified herself based on her bias in favor of Polsinelli, PC. Judge Levy indicated that her spouse worked for the Polsinelli firm on February 6, 2020. Judge Levy should have disclosed this information when she first got involved and Yvonne Allen would have disqualified her from all of her matters (14SL-PR03596, 19SL-PR03008, 19SL-PR02910). On expenses, Judge Levy approved Commissioner Weiss's Order of October 17, 2018 when she should have disqualified herself. When the issue was raised on appeal (ED108484), Judge's Order was changed from the original statement suggesting bias in favor of the Polsinelli law firm to "Judge Ellen Sue Levy,

Division, 11, and hereby recuse herself from the above matter." and in 19SL-PR02910 was changed from bias in favor of Polsinelli, PC to the following: "although not specified in the Motion, the Court finds that the Motion for Disqualification is governed by Section 472.010 RSMo and the case law related thereto. The Court finds that an Affidavit was filed in support of the Motion and, although the court disputes the allegations therein, triggers the application of the statute." At the hearing February 6, 2020 in 19SL-PR02910 where the motion to disqualify the judge was being taken up in chambers with Judge Ellen Sue Levy indicating that her husband works for Polsinelli, PC. After the Judge's orders were changed, Yvonne's attorney filed an affidavit in her cases and pointed out the bias. David Allen filed a motion to strike the affidavit, which shows a motion to cover up extrinsic fraud, obstruction of justice, and crimes committed.

94.     On September 16, 2019, Yvonne Allen filed a suit (19SL-PR02910) to take up Central Trust Company's collaboration with David Allen to change Jack Allen's will to disinherit Yvonne Allen. Three days later, on September 19, 2019, Central Trust Company filed their suit against Yvonne Bohac Allen and all the residual heirs (19SL-PR03008). A motion to consolidate the two cases was filed in both cases on November 15, 2019 and set for hearing November 25, 2019. At that time, the Court refused to take up the motion to consolidate 19SL-PR02910 and 19SL-PR03008 and continued everything to December 12, 2019.

95.     On December 2, 2019, David Allen filed a frivolous motion for sanctions against Yvonne Allen's attorney under Rule 55.03(c) stating everything was litigated in 19SL-PR02910 and that Yvonne Allen's claims were meritless and barred by res judicata. On December 12, 2019, Judge Ellen Sue Levy issued an order that David Allen's Motion to Dismiss must be reversed and

treated as a motion for summary judgement by Yvonne Allen. The Judge used the precedence of

King General Contractors v. Reorganized Church, 821 SW2d 495, 499, in which clearly shows

bias, judicial malfeasance and manifest injustice due first to the fact that she said we agreed to

this process which was clearly not true.


96.     They tried to take away Yvonne's right to an attorney and due process of law, declaring

state precedence by allowing and flipping the parties so that res judicata governs and that

Yvonne Allen cannot raise her Missouri and United States Constitutional rights, but at the same

time receiving evidence of the additional net income of $98,052.03 in capital gains and from net

income from Jack Allen's practice, which Yvonne Allen was entitled to get, and was presented

by affidavits and tax returns March 24, 2021.


97.     In this process, Yvonne filed an affidavit to disqualify Judge Ellen Sue Levy for bias

toward or in favor of the Polsinelli law firm. Judge Ellen Sue Levy disqualified herself as Judge

and the case was assigned to Nicole Sydney Zellweger, indicated that Yvonne Allen had no case.

Despite the facts (tax returns) showed Yvonne Allen was entitled to $98,052.03 additional

income in in the first two years of the estate, the judge sanctioned Yvonne's attorney $14,862.80

and after nearly a month, removed the sanctions against Yvonne's attorney and imposed it

against Yvonne Allen. All of these actions constitutes bias, gross judicial malfeasance or

manifest injustice which is reversible error.

### MEMORANDUM IN SUPPORT OF

Federal law requires the automatic disqualification of a federal judge under certain

circumstances. In 1994, the U.S. Supreme Court held that "Disqualification is required if an

objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified. " [Emphasis added]. Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994).

Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process."). That Court also stated that Section 455(a) "requires a judge to recuse himself in any proceeding in which her impartiality might reasonably be questioned." Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989). In Pfizer Inc. v. Lord, 456 U.S. 532 (8th Cir. 1972), the Court stated that "It is important that the litigant not only actually receive justice, but that he believes that he has received justice."

The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954). A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice. "Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself sua sponte under the stated circumstances. " Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989). Further, the judge has a legal duty to disqualify himself

even if there is no motion asking for his disqualification. The Seventh Circuit Court of Appeals further stated that "We think that this language [455(a)] imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed." Balistrieri, at 1202.

Judges do not have discretion not to disqualify themselves. By law, they are bound to follow the law. Should a judge not disqualify himself as required by law, then the judge has given another example of his "appearance of partiality" which, possibly, further disqualifies the judge. Should another judge not accept the disqualification of the judge, then the second judge has evidenced an "appearance of partiality" and has possibly disqualified himself/herself. None of the orders issued by any judge who has been disqualified by law would appear to be valid. It would appear that they are void as a matter of law, and are of no legal force or effect. Should a judge not disqualify himself, then the judge is in violation of the Due Process Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause."). Should a judge issue any order after he has been disqualified by law, and if the party has been denied of any of his / her property, then the judge may have been engaged in the Federal Crime of "interference with interstate commerce". The judge has acted in the judge's personal capacity and not in the judge's judicial capacity. It has been said that this judge, acting in this manner, has no more lawful authority than someone's next-door neighbor (provided that he is not a judge). However some judges may not follow the law. If you were a non-represented litigant, and should the court not follow the law as to non-represented litigants, then the judge has expressed an "appearance of partiality" and, under the law, it would seem that he/she has disqualified him/herself. However, since not all judges keep up to date in the law, and since not all judges follow the law, it is possible that a judge may not know the ruling of the U.S. Supreme

Court and the other courts on this subject. Notice that it states "disqualification is required" and that a judge "must be disqualified" under certain circumstances.

The Supreme Court has also held that if a judge wars against the Constitution, or if he acts without jurisdiction, he has engaged in treason to the Constitution. If a judge acts after he has been automatically disqualified by law, then he is acting without jurisdiction, and that suggest that he is then engaging in criminal acts of treason, and may be engaged in extortion and the interference with interstate commerce. Courts have repeatedly ruled that judges have no immunity for their criminal acts. Since both treason and the interference with interstate commerce are criminal acts, no judge has immunity to engage in such acts.

**X.    Were there apparent conflicts of interests in this case?**

98.    There were numerous conflicts of interest:

1.  First, the conflict of interest with Yvonne Allen and the decedent's four offspring. Yvonne Allen was made independent personal representative of Jack Allen's estate and was given the authority to restructure the investment portfolio to provide an income and home for Yvonne's life.

2.  David Allen and his siblings used their authority to implement fraudulent practices in order to remove Yvonne Allen and get David Allen appointed as independent personal representative for his dad's will and estate.

    a.  He changed the name from the Yvonne Trust to the Testamentary Trust.

    b.  He changed the trust to an aggressive growth trust.

    c.  He denied Yvonne Allen her right to $98,052.03 in income in the first two years of the estate.

    d.  He denied her the right to the net income of the estate.

     e.   He denied Yvonne Allen her right to $24,343.05 in additional expenses she was entitled to as an independent personal representative in the first two years of the estate (under 473.810).

     f.   David Allen denied Yvonne Allen her rights to due process as well as a hearing and the right to confront witnesses.

3.   There were conflicts of interest between Yvonne Allen and the Polsinelli law firm (David Allen's attorney) and Judge Ellen Sue Levy.

     a.   The Polsinelli law firm represented Yvonne Allen's first husband or creditors in a suit dating back to the early 2000's. Jack Allen, the decedent, represented Yvonne Allen in the matter.

     b.   Judge Ellen Sue Levy appointed William Gust, an employee of the Polsinelli firm, to replace Commissioner Weiss. Twice Judge Ellen Sue Levy appointed William Gust to handle her docket, which included the Jack Allen estate case 14SL-PR02596 in it. Twice Commissioner William Gust recused himself from the case (14SL-PR02596). In March of 2019, the Court was asked to consider certain expenses ($24,343.05) which were clearly estate expenses under 473.810 RSMo and income matters; tax returns show she was entitled to $98,052.03 in capital gains and law firm bills she collected. Judge Nicole Sydney Zellweger had the tax returns and affidavits supporting there was enough evidence that summary judgement against Yvonne Allen should not be granted nor the matter flipped and the motion to dismiss by David Allen granted.

**XI. Was there proof of apparent malice and intent in this case?**

99.     The malice and intent are demonstrated by everything David Allen and Central Trust Company have done, including extrinsic fraud, violations of Yvonne Allen's constitutional rights, due process, right to a hearing, judicial malfeasance, obstruction of justice, bias and manifest injustice and attacking Yvonne Allen's attorney.

**XII. Were the sanctions placed upon the Petitioner a violation of state law, and did these sanctions show clear bias and place a chill effect upon the Petitioner, as well as, fraud upon the court, in this case?**

100.    Upon disqualifying Judge Ellen Sue Levy on February 6, 2020 (19SL-PR02910), the case went to Judge Nicole Sydney Zellweger. The Judge allowed Yvonne Allen to file an affidavit and tax returns for the estate fiscal years 2014, 2015, 2016 and 2017. For the fiscal year 2014 and 2015 (August 1, 2014 through July 31, 2016), Yvonne Allen had additional net income of $98,052.03 which she was <u>NOT</u> given credit. This by itself should have led to the dismissal of David Allen's Motion to Dismiss. Judge Nicole Sydney Zellweger decision repeated Judge Ellen Sue Levy's decision.

101.    The Court disregarded the will and tax returns and entered a judgement against Yvonne Allen's attorney for $14,862.80. After nearly a month, the Judge removed the sanctions and imposed sanctions for $14,862.80 against Yvonne Allen.

102.    Yvonne Allen's attorney filed affidavits in all Yvonne Allen's cases stating that Judge Ellen Sue Levy had indicated at the disqualification conference that her husband worked for the Polsinelli law firm.

In 19SL-PR03008, it was pointed out that Central Trust Company worked hand-in-hand with the residual beneficiaries and against Yvonne Allen, the life-time beneficiary.


103.     Central Trust Company did NOT take possession of all the trust assets as Judge Whittington, ordered or implied. Central Trust Company did not hold David Allen accountable for his actions. Central Trust put most if not all the stocks in growth stocks and investments. Central Trust Company did not follow the will of John Fingal Allen, III. Central Trust Company reduced income producing stocks so that dividends were only one or two percent. Central Trust Company maintained at least two sets of different statements – one for David Allen and company, and one for Yvonne Allen.

## XIII. Did the Trust Company have a fiduciary obligation to monitor and correct, or specifically to bring to light of the courts the illegal transfer of funds, or assets, in which they are now liable or obligated pursuant to RSMO 362.332?

104.     David Allen and Central Trust Company, rejected having an independent accounting of estate and trust actions. Central Trust Company was the only trustee of the Yvonne Trust to sign off on all estate and trust expenses, including all of David Allen's attorney fees. David Allen paid all of Central Trust Company's expenses. Central Trust Company used the principle and income statute to deny Yvonne Allen the net income from capital gains and used it to pay the residual beneficiaries' share of the trust expenses instead of payment of the net capital gains to Yvonne Allen. Central Trust Company filed a motion to sever the allegation of fraud done by David Allen and Central Trust Company against the Court and justice system as well as Yvonne.

105.     On November 12, 2020, Parkside Financial Bank and Trust Company was appointed by the Court as special fiduciary for the John Fingal Allen, III Testamentary Trust.

106.     On March 31, 2021, the Court appointed Parkside Financial Bank and Trust Company as the permanent successor trustee of Jack Allen's Testamentary Trust (Yvonne Trust) issued a judgement against Yvonne Allen in 19SL-PR03008 and in favor of Central Trust Company. By that order, the judge replaced Central Trust Company as sole trustee of the John Fingal Allen, II Testamentary Trust.

107.     On April 12, 2021, Parkside Financial Bank and Trust Company filed a suit in 19SL-PR03008 for instructions as the new trustee.

108.     On April 30, 2021, Yvonne Allen filed a motion for a new trial.

109.     On May 5, 2021, Parkside Financial accepted the John Fingal Allen, III Testamentary Trust (also known as the Yvonne Trust).

110.     On May 6, 2021, Parkside Financial Bank and Trust Company withdrew their request for instructions in 19SL-PR03008.

111.     On May 11, 2021 Central Trust Company, as Trustee of the John Fingal Allen, III Testamentary Trust u/w dated 1/26/09, though no longer trustee, filed a memo in opposition to

Yvonne Allen's Motion for New Trial. The memo of Central Trust Company was invalid because Central Trust Company was no longer a party to the case.

112.     On May 13, 2021, Parkside Financial Bank and Trust Company filed a new trust case (21SL-PR01813) and labeled it as "Attempt to Resolve the Issues Among Beneficiaries and Requesting Instruction. On May 14, a summons was issued. On May 17, 2021, Ellen Sue Levy was assigned the case (21SL-PR01813) and she recused herself.

113.     May 20, 2021, Judge J. Medler was assigned the case, but the case is diverted and assigned to Judge Nicole Sydney Zellweger.

114.     June 3, 2021, Parkside Financial Bank and Trust Company filed an amended verified petition for instructions.

115.     June 30, 2021, Yvonne Allen filed her Third Amended Motion for a New Trial.

116.     July 6, 2021, Central Trust Company as Trustee of the John Fingal Allen, III Testamentary Trust u/w dated 1/26/09 filed a response to Yvonne Allen's Third Amended Motion for New Trial. At that time, Central Trust Company was not Trustee and no longer had jurisdiction to respond because Parkside replaced them.

117.    July 7, 2021, Motion for New Trial is heard and denied. Parkside Financial Bank and Trust Company never addressed the issue of fraud, and leapfrogged over the fraud issue by not addressing it. Central Trust Company no longer had standing or jurisdiction to oppose the fraud.

118.    July 21, 2021 Notice of Removal to Federal Court is filed..

119.    On August 19, 2021, Yvonne Allen filed a motion to stay proceedings in 21SL-PR01813 while the matter while the goes to federal court. Court denied stay order.

120.    August 20, 2021, the circuit court clerk stated the case (19SL-PR030008) is removed to federal court. Also on August 20, 2021, Judge Nicole Zellweger denies the motion to stay proceedings in 21SL-PR01813 and orders a conference on September 1, 2021 and Trial on October 15, 2021.

121.    August 31, 2021, Judge Nicole Zellweger enters a default order of judgement.

122.    September 10, 2021, a Notice of Removal to Federal Court was filed by Yvonne Allen on case 21SL-PR01813.

123.    The Trust company accepted this account and had a fiduciary duty to do proper checks, proper verification, as well as, monitor this case properly, (to include any arguments made in court), in which they failed to do, in which makes them liable, responsible, and obligated for any damages, in which had occurred in this matter, pursuant to RSMo § 362.332, in which they

signed a waiver, in which does not release them from liability. The non-plausibility denials is no excuse for not accepting responsibility. In 19SL-PR03008, 19SL-PR02910, and probably in 21SL-PR01813 all being paid by the testamentary trust and are being added to the estate judgement against Yvonne Allen and bearing an interest rate of nine percent (9%).

PRAYER OF RELIEF

WHEREBY the Plaintiff, Yvonne Allen, requests that the court give a written memorandum of the following:

1. That the federal court send in an auditor to review the lower court records to see if records were changed and altered or modified in these cases.

2. That any and all relevant cases be adjoined into this action including 14SL-PR02596; 17SL-PR01280; 19SL-PR02910; 19SL-PR03008; ED108484; and 21SL-PR01813.

3. That Central Trust Company and/or Parkside Financial Bank and Trust Company place a 10 million dollar security bond, due to their involvement in extrinsic acts of fraud, obstruction of justice, violation of state and federal laws and constitutions and pursuant to RSMO 362.332. The federal court assume jurisdiction and reverses any and all orders.

4. That this court retain jurisdiction because this case falls under Department of Commerce Article I Section 8 Clause 3 of the U.S. Constitution which involves banks and extrinsic acts of fraud, obstruction of justice, conspiracy to cover it up, violation of due process rights, gross judicial malfeasance, and manifest injustice, which are reversible errors mandated by law.

5. That any and all sanctions against Yvonne Allen in any case related to these cases be dismissed, due to acts of extrinsic fraud, concealment, gross judicial misconduct, obstruction of justice, and violation of contractual laws, to obtain these improper sanctions.

6. That Yvonne Allen be awarded her attorney's fees arising out of these matters.

7. That Yvonne Allen be awarded actual damages, lost income and punitive damages.

8. That Yvonne Allen be awarded any and all other remedies and damages which this court deems necessary and appropriate.

On this ___ day of October 2021, the Petitioner/Respondent, Yvonne Bohac Allen, by and through her counsel, Stephen C. Banton #22693, and files and serves on all parties a Petition for Removal from the St. Louis County Circuit Court of Missouri, to the USDC for the Eastern District of Missiouri, due to violations of the FRCP Rule 2.03 (FRCP Rule 81c, 28 USC § 1331, 28 USC § 1441, 28 USC § 1446, and 42 USC § 1983, Missouri Rule 84.04 (reversable error), 18 USC § 241, and 18 USC § 242.)

THEREFORE the Petitioner/Respondent prays that the USDC for the Eastern District of Missouri Grant in favor of the Petitioner/Respondent for the above referenced violations, and render a judgement which this Court deems necessary, just and proper in this matter.

Respectfully submitted,
**Legacy Law, LLC**

_____

Stephen C. Banton, MBE#22693
Attorney for Plaintiff
16024 Manchester Road, Suite 200
Ellisville, MO  63011
Tel: (636) 259-3350
Fax: (636) 238-8737
steve@bantonlaw.com

43

## Certificate of Service

I certify that a true and accurate copy of the above and foregoing document was served to the following individuals by facsimile, email, in person, or by first class mail, postage prepaid, on this the _____ day of _____, 2021:

Joan M. Gilmer
St. Louis Circuit Court Clerk
105 S. Central
Clayton, MO 63105
(314) 615-4400

Robert J. Selsor
100 South Fourth Street, Suite 1000
Saint Louis, Missouri  63102-1800

Britton Laurence St. Onge
100 S. 4th St.
Suite 1000
St. Louis, MO 63102

Curtis Seary, President, Trust and Family Office
James C. Wagner, Chief Executive Officer
Parkside Financial Bank & Trust Company
8112 Maryland Avenue, Suite 101
Saint Louis, Missouri 63105

Tina Babel
120 South Central Avenue, Suite 1800
Saint Louis, Missouri 63105

David Chandler Allen
214 Country Ridge
Columbia, Illinois 62236

Sandra Padgett

4300 Beulah Drive
La Canada, California 91011

Richard Cutler
1977 Butler Boulevard, BCM633
Huston, Texas 77030

Thomas Glenn
1213 Westrun Drive
Ballwin Missouri  63021

Scott Kellett, President
Central Trust Company
238 Madison
Jefferson City, Missouri 65101

Michael W. Bartolacci
Thompson Coburn
One US Bank Plaza
St. Louis, MO 63101-1693

Gregory J. Linanes
Clerk of Court
Unite States District Court
Eastern District of Missouri
111 South Tenth St.
Suite 3.300
St. Louis, MO 63102